IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA          MAY 1 0 2012

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Case No. 1:12-mj-00324 |
| | ) | |
| JOSE MOISES LEMUS BELTRAN, | ) | |
| | ) | |
| ELDER ANTONIO MEJIA RAMOS, | ) | |
| | ) | |
| JOSE WILMAR NOLASCO, | ) | |
| also known as "Bonny," and | ) | |
| | ) | |
| MARIO D. ALVARADO FLORES, | ) | |
| also known as "Marito," | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Glenn Mai, Special Agent of the Federal Bureau of Investigation ("FBI"), Washington (D.C.) Field Office, Northern Virginia Resident Agency, being duly sworn, depose and state the following:

### INTRODUCTION

1. This affidavit is submitted in support of an application for a criminal complaint for the following people: Jose Moises Lemus BELTRAN; Elder Antonio Mejia RAMOS; Jose Wilmar NOLASCO (also known as "Bonny"); and Mario D. Alvarado FLORES (also known as "Marito"). Each person will be referred to individually by the portion of their name that is in all capitalized letters in the paragraph above. They will collectively be referred to as the defendants.

2. Your affiant submits that the evidence described in this affidavit establishes probable cause to believe that between in and around 2006 and the present date, within the

Eastern District of Virginia and elsewhere, the defendants did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with other persons, both known and unknown, to unlawfully, knowingly, and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3. On May 10, 2012, law enforcement officers arrested BELTRAN, NOLASCO, and FLORES based upon probable cause to believe they are members of the conspiracy. RAMOS, however, is being detained in the Fairfax County Adult Detention Center on local charges. Your affiant therefore requests that a warrant be issued for his arrest.

4. All information in this affidavit is either personally known to me, has been related to me by other law enforcement officers and/or confidential sources, or has been related to me by records and documents gathered during this investigation, as noted. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me or known to the government. The inferences and conclusions I draw from the evidence that are included in this affidavit are what I believe based on my training, experience, and knowledge of the investigation.

## AGENT BACKGROUND

5. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

6. I am a Special Agent of the FBI and have been so employed since September 18, 1995. I have received extensive training in criminal law enforcement from the FBI Academy in

Quantico, Virginia, including training in drug identification, drug distribution methods and law enforcement techniques related to drug trafficking. As a Special Agent with the FBI, I have applied for and obtained arrest and search warrants and have participated in the investigation of narcotics-related offenses resulting in arrests and convictions. As a narcotics investigator, I have interviewed over a hundred individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale importation, manufacture, and distribution of controlled substances. In these interviews, I have also obtained information regarding the means through which individuals involved in drug trafficking launder money and hide the assets acquired through drug distribution. Though my training and experience, I am familiar with the actions, habits, traits, methods and terminology utilized by the traffickers and abusers of controlled dangerous substances.

7. Through my training, experience, and conversations with other experienced investigators and law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations and their use of telephones and other devices to conduct their criminal enterprises; including the use of fictitious subscriber names to conceal their identities and thwart investigation of their illegal activities.

## PROBABLE CAUSE

### I. ADOPTION OF PRIOR AFFIDAVIT

8. On May 8, 2012, the Honorable T. Rawles Jones, Jr., United States Magistrate Judge, United States District Court for the Eastern District of Virginia, issued a criminal complaint and arrest warrants in the case *United States v. Melcy Yalexsy Guevara-Barrera, et al.*

(docket number 1:12-mj-00310), charging thirty-two defendants with conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Your affiant swore to an affidavit in support of the criminal complaint and arrest warrants. The affidavit is attached hereto and incorporated herein by reference as Exhibit 1, and will be referred to as the "May 8, 2012, Affidavit".

9. The above-named defendants were referred to in the May 8, 2012, Affidavit as "uncharged co-conspirators." BELTRAN is UCC #21 (see paragraphs 179 and 180). RAMOS is UCC #23 (see paragraphs 186 to 194). NOLASCO is UCC #24 and UCC #26 (see paragraphs 266, 269 to 274, and 309 to 310). And FLORES is UCC #25 (see paragraphs 303 to 310).

## II. ADDITIONAL EVIDENCE

### A. Beltran

10. On May 10, 2012, law enforcement officers conducted a "knock and talk" at what was believed to be BELTRAN's residence in Falls Church, Virginia. The lessee of the residence answered the door and consented to the officers entering the residence. Once inside, officers observed other people come out of various rooms. The lessee explained that he sub-leases rooms to those people. All the occupants consented to providing the officers with identification, through which BELTRAN was identified as one of the occupants.

11. Officers observed in plain view two cellular telephones on what was identified as BELTRAN's bed. The officers called the telephone number UCC #21 was intercepted using to communicate with Jose Fredy DELCID (also known as "Oscar Salgado," "Oscar," "Franklin," "Chami," and "Matador"), to include those communications discussed in the May 8, 2012, Affidavit. As they did so, one of the cellular telephones on BELTRAN's bed began to ring.

4

Officers confirmed that the number that was calling the telephone on the bed was the number they were using. BELTRAN said the ringing telephone was his. A search of BELTRAN's person revealed that he was in possession of approximately one ounce of suspected cocaine.[1]

12. One of the law enforcement officers present for these events was UC #2, who made a series of controlled purchases of cocaine from DELCID that are discussed in the May 8, 2012, Affidavit. DELCID never personally handed UC #2 the cocaine during those purchases. UC #2 recognized BELTRAN as having been a person who gave him cocaine on DELCID's behalf during at least two of the controlled purchases.

**B.    Ramos**

13. On May 8, 2012, UC #3 made a controlled purchase of approximately two ounces of suspected cocaine from RAMOS, who was arrested and identified afterward. RAMOS had in his possession two cellular telephones, one of which was associated the telephone number RAMOS was intercepted using to communicate with DELCID, to include those communications discussed in the May 8, 2012, Affidavit.

**C.    Nolasco**

14. On May 10, 2012, law enforcement executed a court-authorized search warrant at NOLASCO's residence in Baltimore, Maryland. NOLASCO was in a bedroom by himself at the time law enforcement entered. NOLASCO provided his full name, as well as his nickname,

---

[1] The controlled purchases and seizures referenced within this affidavit and the May 8, 2012, Affidavit were of substances that, based on the investigation and training and experience of law enforcement, are suspected to be cocaine. Though some field tests were performed, because agents are awaiting the results of analyses conducted of all the substances by forensic chemists with the Drug Enforcement Administration and other agencies, all references within this affidavit to cocaine in law enforcement's possession should be read as "suspected cocaine." Additionally, the stated quantities of the suspected cocaine are based on estimates made by law enforcement in and around the time of the respective seizures of those substances and therefore are not final and are subject to revision by the forensic chemists.

"Bonny." I am aware from the investigation that this is the nickname by which co-conspirators, to include SAMUEL Benitez-Pineda (also known as "Wilfredo Benitez," "Roque," and "Chiripa") and Maria FLORINDA Benitez-Pineda (also known as "Flor" and "Loli"), referred to NOLASCO in intercepted communications.

15. NOLASCO provided law enforcement with his telephone number, which is the same telephone number NOLASCO was intercepted using to communicate with SAMUEL, to include those communications discussed in the May 8, 2012, Affidavit. Law enforcement found in the bedroom with NOLASCO the cellular telephone associated with that same telephone number. Subscriber information for that telephone indicates that it is registered in NOLASCO's name.

D. **Flores**

16. On May 10, 2012, law enforcement arrested FLORINDA at her residence in Baltimore, Maryland, on a warrant issued by Magistrate Judge Jones on May 8, 2012. FLORES was inside the residence with FLORINDA, and both he and FLORINDA separately told law enforcement they are married. As described in the May 8, 2012, Affidavit, I know from the investigation that SAMUEL and FLORINDA discussed on several occasions that FLORINDA's husband, who they referred to as "Marito," a variation of FLORES's first name, is involved in the conspiracy to distribute cocaine.

17. In paragraphs 101 through 119 in the May 8, 2012, Affidavit, I described what law enforcement observed and believed to be a courier supplying various members of the conspiracy with cocaine at three different times on February 19, 2012. Law enforcement also observed that day a 2002 Nissan pickup with Maryland license plates registered in FLORES's name arrive at the complex. There were two people in the pickup, and, through the use of

FLORES's Maryland driver's license photograph, law enforcement was able to identify him as the driver of the vehicle. The passenger in the pickup was observed getting out and walking deeper into the apartment complex towards the area where the courier's Honda Civic was parked. A short time later, the passenger was observed walking out of the complex and carrying a black plastic bag. The passenger got into the pickup with FLORES and the two left the area. I believe that the purpose of the meeting was for FLORES and the passenger to pick up cocaine from the courier.

18. On May 4, 2012, while SAMUEL and FLORINDA were intercepted speaking with one another, I believe FLORES took the phone from FLORINDA so he could speak with SAMUEL himself. SAMUEL said, "Brother in law, they are picking for me some that are arriving today. They will arrive soon." FLORES said, "Yeah?" SAMUEL said, "But it is a small amount, but I could send some from there." FLORES replied, "He told me that he was going to go over there, right?" SAMUEL said, "Yeah, [he] will come. [He] could have sent you, [name redacted] really screwed up. There was really good material and the fucker had packed a pack of eight, and then he forgot the sick one and only sent me a frame of four, and eight that my sister sent me. It is four, eight, two and there are others there too, but this dude told me that he was going to give me $500 for me to give them to another guy who was going to come and get them here. But at least some for now. I will get you some. We'll see how many. I will see how much is there." FLORES replied, "Okay." SAMUEL said, "I will send them to you with this guy." FLORES said, "That will be good then. They are asking me here but since I am dry." I believe SAMUEL went on to explain that he purchased additional cocaine from a subject who came to Virginia from Massachusetts. SAMUEL then told FLORES, "So, I will send you some with [UI],

7

brother in law. I am first going to check to see what is coming and how much. I want to see what the deal is then." (TT2 #15,973).

## CONCLUSION

19. Based on the foregoing, your affiant submits there is probable cause to believe that between in and around 2006 and the present date, within the Eastern District of Virginia and elsewhere, the defendants did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with other persons, both known and unknown, to unlawfully, knowingly, and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

20. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Glenn Mai
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me this 10th day of May, 2012.

/s/Thomas Rawles Jones, Jr.
Honorable T. Rawles Jones, Jr.
United States Magistrate Judge

8